**2020 UT App 19**

# THE UTAH COURT OF APPEALS

NATHAN HAYNES,
Appellant,
*v.*
DEPARTMENT OF PUBLIC SAFETY AND KEITH SQUIRES,[1]
Appellees.

Opinion
No. 20180752-CA
Filed February 6, 2020

Third District Court, Salt Lake Department
The Honorable Richard D. McKelvie
No. 180901903

Nate N. Nelson, Jeremy G. Jones, and Joshua S.
Ostler, Attorneys for Appellant

Sean D. Reyes and J. Clifford Petersen, Attorneys
for Appellees

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES KATE APPLEBY and RYAN M. HARRIS concurred.

HAGEN, Judge:

¶1     Nathan Haynes brought this breach of contract action alleging that the Utah Department of Public Safety (DPS) violated the terms of a settlement agreement when it refused to reinstate his employment as a Utah Highway Patrol trooper. DPS moved to dismiss the complaint, and the district court granted the motion, ruling that, as a matter of law, Haynes could

---

1. Although Haynes named former DPS commissioner Keith Squires as a defendant in his complaint, he has not challenged the district court's dismissal of his claim against Squires.

not state a breach of contract claim because he failed to perform his obligations under the settlement agreement. Because we conclude that the relevant terms of the settlement agreement are ambiguous, we reverse and remand for further proceedings.

BACKGROUND[2]

¶2      In early March 2017, the Utah Highway Patrol (UHP) notified Haynes that it intended to terminate his employment as a trooper. Haynes was told that the decision to fire him was based on a determination by the Salt Lake County District Attorney's Office (the DA) that Haynes was "no longer a viable witness" as a result of *Brady/Giglio* impairment.[3] Later that

---

2. "On appeal from a motion to dismiss, we review the facts only as they are alleged in the complaint. We accept the factual allegations as true and draw all reasonable inferences from those facts in a light most favorable to the plaintiff." *Zemlicka v. West Jordan City*, 2019 UT App 22, ¶ 4 n.2, 438 P.3d 1036 (cleaned up).

3. *Brady/Giglio* impairment of a police officer typically
>       refers to a prosecutor's decision not to allow the officer to testify at the trial of a criminal defendant because the prosecutor would be required to disclose to the defense existing information about the officer's prior misconduct or other grounds to attack the officer's credibility, disclosures which could compromise the prosecution. Officers who are *Giglio* impaired based on the existence of such compromising information may be prevented from participating in police investigations or making arrests so as to avoid a situation where a criminal prosecution is dependent on that officer's testimony.

(continued…)

month, Haynes and his counsel met with DPS to appeal the decision, after which Haynes entered into a settlement agreement with DPS. According to the terms of the settlement, Haynes would be reinstated with UHP if he was "able to reverse the [DA's] *Brady/Giglio* determination of Haynes on or before the end of that year in the form of obtaining injunctive relief from a court of law in relation to the [DA's] *Brady/Giglio* determination."

¶3     In September 2017, Haynes reached out to the DA for information regarding the basis for its determination. The DA responded that it had "not made a determination that Haynes is '*Brady/Giglio* impaired.'" Nonetheless, the DA confirmed that, "after receiving several documents from UHP and [DPS], the [DA] decided it is no longer willing to use Mr. Haynes as an officer witness in criminal prosecutions."

¶4     Based on the DA's representation that it had not actually made "a determination that Haynes is '*Brady/Giglio* impaired,'" Haynes demanded that he be reinstated to his former position. DPS refused, and Haynes brought a breach of contract action. DPS filed a motion to dismiss under rule 12(b)(6) of the Utah Rules of Civil Procedure, arguing that Haynes failed to comply with the requirements of the settlement agreement. The district court granted the motion to dismiss, reasoning that Haynes not only "fail[ed] to comply with the letter of the Settlement (i.e. obtaining a reversal of the DA by injunctive relief), but he also failed to comply with the spirit of the Settlement (i.e. convincing the DA that he was a viable witness in criminal prosecutions)." Haynes now appeals.

---

(…continued)
*Stockdale v. Helper*, No. 3:17-CV-241, 2017 WL 2546349, at *2 n.3 (M.D. Tenn. June 13, 2017) (cleaned up). *See generally Giglio v. United States*, 405 U.S. 150 (1972).

ISSUE AND STANDARD OF REVIEW

¶5    Haynes contends that the district court erred in granting DPS's motion to dismiss. "We review a decision granting a motion to dismiss for correctness, granting no deference to the decision of the district court." *Fehr v. Stockton*, 2018 UT App 136, ¶ 8, 427 P.3d 1190 (cleaned up). "When reviewing a motion to dismiss based on Rule 12(b)(6), an appellate court must accept the material allegations of the complaint as true, and the trial court's ruling should be affirmed only if it clearly appears the complainant can prove no set of facts in support of his or her claims." *Mackey v. Cannon*, 2000 UT App 36, ¶ 9, 996 P.2d 1081 (cleaned up). In reviewing "a rule 12(b)(6) dismissal, our inquiry is concerned solely with the sufficiency of the pleadings, and not the underlying merits of the case." *Fehr*, 2018 UT App 136, ¶ 8 (cleaned up).

ANALYSIS

¶6    Haynes's complaint alleges breach of contract based on DPS's refusal to reinstate him as a UHP trooper. "To survive a motion to dismiss, the complaint must allege facts sufficient to satisfy each element of a claim, otherwise the plaintiff has failed to show that [he] is entitled to relief." *Harvey v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 2017 UT 75, ¶ 60, 416 P.3d 401. The elements of a breach of contract claim are "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *America West Bank Members, LC v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224 (cleaned up). In its motion to dismiss, DPS argued that the complaint failed as a matter of law on the second element because Haynes did "not allege that he [had] performed the essential prerequisite for relief" under the settlement agreement. The relevant contractual provision provides:

> If Haynes is able to reverse the [DA's] *Brady/Giglio* determination of Haynes on or before the end of that year in the form of obtaining injunctive relief from a court of law in relation to the [DA's] *Brady/Giglio* determination, DPS agrees to allow him to resume paid employment as a [UHP] Trooper restoring Haynes to the same pay and seniority status that he currently receives and holds with DPS.

¶7    As the district court observed, it is undisputed that Haynes failed to "obtain[] a reversal of the DA by injunctive relief." But this undisputed fact does not preclude Haynes's claim as a matter of law. "The general rule with respect to what performance is required when a contract is made for the agreed exchange of two performances, one of which is to be rendered first, is not strict, literal, and exact compliance with the terms of the contract but rather only substantial compliance or substantial performance." 15 *Williston on Contracts* § 44:52 (4th ed. 2019). Haynes alleges that he effectively rendered performance by obtaining a statement from the DA that it had "not made a determination that Haynes is '*Brady/Giglio* impaired.'"[4]

---

4. At the motion to dismiss stage, the district court properly considered the settlement agreement and the correspondence from the DA, which were "referred to in the complaint" and "central to the plaintiff's claim." *See Oakwood Village LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 13, 104 P.3d 1226 (cleaned up). Although not attached to the complaint or expressly incorporated by reference, DPS submitted "indisputably authentic" copies of these documents in connection with its motion to dismiss. *See id.* (cleaned up).

¶8    The district court rejected this argument because, in its view, Haynes had not only failed to obtain injunctive relief, "but he also failed to comply with the spirit of the Settlement (i.e. convincing the DA that he was a viable witness in criminal prosecutions.)" Indeed, in typical law enforcement parlance, the term "*Brady/Giglio* impaired" generally refers to an officer that a prosecutor declines to use as a witness because of credibility or impeachment concerns. *See supra* note 3. And it is undisputed that Haynes never convinced the DA that he was a viable witness in criminal prosecutions.

¶9    But just because the meaning of a contractual term "may seem clear to a particular reader—including a judge—this does not rule out the possibility that the parties chose the language of the agreement to express a different meaning." *Lunceford v. Lunceford*, 2006 UT App 266, ¶ 13, 139 P.3d 1073 (cleaned up). A contract is ambiguous if "the language of the contract is reasonably capable of being understood in more than one sense." *Id.* ¶ 14 (cleaned up). "When determining whether a contract is ambiguous, any relevant evidence must be considered," but the competing interpretations must be "reasonably supported by the language of the contract." *Daines v. Vincent*, 2008 UT 51, ¶ 26, 190 P.3d 1269 (cleaned up).

¶10   For purposes of surviving a motion to dismiss, Haynes has demonstrated that the term "*Brady/Giglio* determination" as used in the settlement agreement is capable of more than one reasonable interpretation. The agreement specifically requires Haynes to reverse "the [DA's] *Brady/Giglio* determination of Haynes." DPS contends that "*Brady/Giglio* determination" is shorthand for a prosecutor's refusal to rely on a particular law enforcement officer as a witness due to credibility or impeachment concerns. Given the DA's continued refusal to use Haynes as a witness for those very reasons, DPS argues that Haynes can prove no set of facts that would establish that he substantially performed his

obligation to reverse the DA's decision. But, as Haynes points out, the settlement agreement refers not to *Brady/Giglio* impairment generally, but instead uses the specific phrase "the [DA's] *Brady/Giglio* determination." Haynes argues that, by referring to a particular determination made by the DA's office, the settlement agreement essentially incorporates by reference the DA's meaning of the term "*Brady/Giglio* determination." Given that the DA has denied making such a determination, Haynes contends that the phrase must mean something other than the DA's stated unwillingness to use Haynes as a witness. In our view, both parties' interpretations are reasonably supported by the language of the settlement agreement. Haynes has therefore demonstrated that the phrase "the [DA's] *Brady/Giglio* determination" is "reasonably capable of being understood in more than one sense." *Lunceford*, 2006 UT App 266, ¶ 14 (cleaned up).

¶11    Where such an ambiguity exists, "the intent of the parties becomes a question of fact upon which parol evidence of the parties' intentions should be admitted." *E & H Land, Ltd. v. Farmington City*, 2014 UT App 237, ¶ 21, 336 P.3d 1077 (cleaned up)). Although further evidence of the parties' intent ultimately may prove DPS's interpretation correct, the parties' intentions cannot be determined as a matter of law in the context of a rule 12(b)(6) motion to dismiss. *See Faulkner v. Farnworth*, 665 P.2d 1292, 1294 (Utah 1983) (holding that the case could not "be decided as a matter of law" because the relevant contractual language was ambiguous). If, on the other hand, Haynes's interpretation of the term "*Brady/Giglio* determination" is ultimately found to be the one intended by the parties, Haynes would then be entitled to an opportunity to demonstrate that obtaining an email from the DA stating that it had "not made a determination that Haynes is '*Brady/Giglio* impaired'" constitutes substantial compliance with his obligations under the settlement agreement.

CONCLUSION

¶12   The materials before the district court demonstrate a plausible claim of ambiguity that is supported by the plain language of the settlement agreement. Accordingly, dismissal under rule 12(b)(6) was premature. We reverse and remand for further proceedings consistent with this opinion.

――――――――